# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW J. GINDLESPERGER,<br>            Plaintiff, | )<br>)<br>) |
| v. | )    C.A. No. 07-25 Erie |
| | )    District Judge McLaughlin |
| JOANNE BARNHART, | )    Magistrate Judge Baxter |
|             Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that Gindlesperger's Motion for Summary Judgment [Document # 9] be denied. It is further recommended that the Motion for Summary Judgment filed by the Commissioner [Document # 11] be granted, thereby affirming the decision of the Commissioner to deny the application for Supplemental Social Security income and disability benefits.

**II.    REPORT**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Matthew J. Gindlesperger (hereinafter, "Gindlesperger") seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying him benefits.

Both Plaintiff Gindlesperger and the Commissioner have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter is now ripe for review and disposition.

### A. Procedural Background

Gindlesperger applied for Disability Insurance Benefits (DIB) and Supplemental Social Security Income on December 7, 2004. His application was denied, and he requested a hearing before an administrative law judge. A hearing was subsequently conducted before ALJ Raymond H. Zadzilko on February 8, 2006, at which Gindlesperger was represented by counsel. The ALJ denied Gindlesperger's application in a decision dated June 29, 2006. Gindlesperger requested review of the hearing decision by the Appeals Council. The Commissioner's decision became final when the Appeals Council denied Gindlesperger's request for review on December 20, 2006. Document # 6, page 4. Plaintiff Gindlesperger then commenced this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the ALJ's decision.

### B. The Record on Appeal

#### 1. Plaintiff's Hearing Testimony

Gindlesperger was born on June 29, 1976. Document # 6-11, page 8. At the time of the most recent ALJ hearing, Gindlesperger was thirty years of age.[1] Document # 6, page 12. He has received a G.E.D. and attended truck driving school. Document # 6-11, pages 8-9. He has a commercial driver's license. Document # 6, page 17. Gindlesperger is not married, but resides with a fiancee, who receives disability payments. Document # 6-8, page 20; Document # 6-11, pages 8-9.

---

[1] At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c); 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(h)(3-4). Although age is generally a chronological determination, the agency's regulations provide that age will not be applied "mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). When an individual is within a few months of reaching age fifty (50), for example, he or she should be given the benefit of a "borderline" age determination under 20 C.F.R. § 404.1563(b) as an individual closely approaching advanced age. Jolly v. Barnhart, 465 F.Supp.2d 498, 505 (2006).

Gindlesperger has past relevant work experience as an assembly line worker, grocery store bagger, boiler room operator, fast food cook, powdered metal plant laborer and pizza delivery person. Document # 6-12, pages 7-8.

### 2. Medical Expert Evidence[2]

Gindlesperger does not challenge the ALJ's findings as to his physical impairments. The Court, therefore, will limit its review to the medical evidence concerning Plaintiff's mental condition.

Gindlesperger was examined by consulting psychologist Bruce Simons, Ph.D., on February 21, 2005. Document # 6-6, pages 21-25. After conducting a mental status examination, Dr. Simons determined Gindlesperger's mood and affect to be blunted. Further, Dr. Simons found that:

> [Plaintiff's] speech was fluent. Tone was normal. He denied feeling suicidal or homicidal. He denied experiencing hallucinations or delusions. He could not count backwards from 100 by 3's. He did know that the capital of Pennsylvania was Harrisburg. He does not know why you need a marriage license to get married or why it is required. His fund of knowledge tends to be fair to poor. Cognitive processing is concrete. He was oriented x 3. Concentration and attention span was good. His short-term memory recall was in the normal range. He states he has trouble falling and staying asleep. His diet pattern is sort of disrupted. He only eats one time a day. His eye contact was good. His insight and judgment were poor and he is estimated to have a low IQ score.

Id. at 24. Based on his examination, Dr. Simons gave Gindlesperger a Global Assessment of Functioning (GAF) score of 55. In Dr. Simon's opinion, Gindlesperger had marked limitations in responding to work pressures and changes in the usual work setting. Document # 6-7, page 1.

---

[2] Included in the medical record are medical reports from Dr. Asha Prabhu regarding a patient other than Plaintiff. Document # 6-8, pages 197-199 and Document # 6-9, pages 204-206. This Court is dismayed that these confidential medical records were provided in error. However, it does not appear that the ALJ referred to any of these medical records in his determination, and so their inclusion does not affect this Report and Recommendation.

Simons diagnosed major recurrent depression, moderate and without any psychotic features, as well as anxiety disorder, possible borderline intellectual functioning, bipolar disorder and antisocial features.  Document # 6-6, page 24.

Dr. Tarter Sharon Becker, a state psychologist, reviewed the record on March 1, 2005, and diagnosed Gindlesperger with major depressive disorder and an anxiety disorder.  Document # 6-7, pages 3-5.  Dr. Becker found that these mental impairments caused only mild limitations in Gindlesperger's performance of daily activities and moderate limitations in his ability to maintain proper social functions, concentration, persistence and pace.  Id. at 13-14.  Dr. Becker found no evidence in the record that Gindlesperger experienced any episode of decompensation.  Id. at 13.

Gindlesperger was examined by his treating psychologist, Paul J. Francis, Ph.D., on June 22, 2005.  Dr. Francis found Gindlesperger to be a "remarkably verbal and open man." Document # 6-8, page 18.  A history of "unmerciful" physical abuse by Gindlesperger's father was noted as well the probability of several learning disabilities.  Id.  Dr. Francis further noted that Gindlesperger is "winsome" and that he can "think and talk fairly rapidly."  Id.  Dr. Francis indicated "it is incredible that he can work carnival rigging, pulling up and tearing down with a back and knee problem if of any consequence.  He appears able to work, but rapidly becomes tired of the same thing day in and day out."  Id.  Finally, Dr. Francis indicated that "this man can work for objectives as he gave up heavy drinking and drug use for his girlfriend.  Perhaps he would be willing to deal with his terrible anger and come to therapy because this more than the physical limitations are what are holding him back occupationally."  Document # 6-8, page 18.  Dr. Francis assigned a GAF score of 58.

Gindlesperger was examined by Asha Prabhu, M.D., a psychiatrist, in November of 2005.  At this examination, he denied having any hallucinations, suicidal or homicidal thoughts. Document # 6-8, pages 20-21.  Dr. Prabhu indicated her opinion that Gindlesperger's insight and judgment were intact, and that she found him to be alert and oriented.  Id. at 21.  She

indicated a GAF score of 60 and diagnosed him with bipolar disorder, alcohol and drug abuse, antisocial personality traits and borderline intellectual functioning. Id.

Further medical evidence was submitted after Gindlesperger's hearing per the request of counsel and with the agreement of the ALJ. Document # 6-12, page 11. Gindlesperger returned to Dr. Francis, his treating psychologist, for another intellectual and psychological evaluation on March 27, 2006. Document # 6-10, page 9. During this examination, Dr. Francis found Plaintiff to be alert and oriented and to demonstrate normal gait and posture. Id. Gindlesperger's speech was found to be "intelligible" and "spontaneous," he had no abnormalities that interfered with normal communication, but he reported feeling intensely depressed. Id.

Dr. Francis also found Gindlesperger's thought processes demonstrated a "rich productivity" that was "rapid and spontaneous." Id. at 10. Gindlesperger's replies to questions were appropriate and "goal-oriented" as well as relevant. Id. Gindlesperger did not display any delusions or preoccupations about illness or emotional problems and Dr. Francis did not detect any obsessions, phobias or hypochondrial symptoms. Id. Dr. Francis further determined that Gindlesperger reflected social behaviors that are harmful to him and contrary to acceptable cultural behavior. Id. The psychologist further opined that

> [Gindlesperger] does not care about the likely outcome of these behaviors as long as it serves his purposes and he is not in terribly influenced [sic] by what might be in the right thing to do. He says he is not sure his medication helps him, and he does not see a counselor to help with problem-solving.

Id. Further testing revealed an IQ of 71, reflecting a verbal IQ of 66 and a performance IQ of 83. Id. at 11. These scores are consistent with a borderline intellectual functioning diagnosis. Id. at 11-12. Dr. Francis also believed that Gindlesperger's performance on these tests may not represent what he could do under ordinary circumstances, pointing specifically to the fact that Gindlesperger had earned his G.E.D. and had obtained a commercial driver's license. Id. at 11. He further opined that Gindlesperger has not wanted to deal with his "explosive temper." Id. at

13. Dr. Francis believed that Gindlesperger "can meet job expectations if he wants to" and could most likely perform well at "a number of job slots." Id.

Dr. Francis completed a medical source statement after Gindlesperger's evaluation, focusing on his ability to perform work-related activities. Id. at 15. The psychologist determined that Gindlesperger had no limitations in his ability to understand, remember and carry out instructions. Id. at 16. Moderate restrictions in his ability to interact appropriately with members of the public, his supervisors and co-workers were also found. Id. Dr. Francis also noted moderate restrictions on Gindlesperger's ability to appropriately respond to work pressures and stress, as well as a slight restriction as to responding appropriately to changes in a routine work setting. Id.

### 3. Vocational Expert's Testimony

During the hearing before the ALJ, Joseph J. Bentivegna, Ph.D., testified as an impartial vocational expert. Document # 6-12, page 6, et seq. The ALJ asked Dr. Bentivegna a question that took into account a hypothetical individual of Gindlesperger's age, education, training and work experience, who had no exertional limitations and who could perform simple, routine, low-stress work that involved no teamwork, no interaction with the public, and no more than occasional interaction with co-workers and supervisors. Id. at 8. Assuming these limitations, the vocational expert was asked whether he could suggest any jobs at the heavy level. Id. Dr. Bentivegna suggested numerous jobs such as drill mechanic helper, a junk yard worker, a saw mill helper, metal assembler. Id. at 9. When asked to suggest jobs that may be appropriate at a light level, given the same hypothetical conditions, the vocational expert indicated that positions such as a building cleaner, food preparation worker, evening janitor, and laundry sorter in a motel setting existed in the national economy. Id.

### C. The ALJ's decision

ALJ Zadzilko issued a decision on June 29, 2006, finding that the record established that Gindlesperger was not disabled. Document # 6, pages 16-27. Specifically, the ALJ found that Gindlesperger's bipolar disorder, anxiety disorder, borderline intellectual functioning, and alcohol and substance abuse are "severe impairments" which have more than a minimal impact on his ability to engage in work-related activities. Document # 6, page 17. However, the ALJ subsequently determined that these impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation, No. 4. In reaching this conclusion, the ALJ considered, but rejected the report of the treating psychologist, Dr. Francis, who found Gindlesperger to have an IQ of 71, a verbal IQ of 66 and a performance IQ of 82 on the WAIS-III IQ test. Document # 6, page 17. In finding the IQ test scores invalid, the ALJ considered the psychologist's notation that Gindlesperger may have "included some shrugs and 'I don't know' answers, believing that lower scores would help his chances for disability after recently being turned down for disability." Id. Further, the ALJ pointed to Dr. Francis' notation that Gindlesperger was able to complete his G.E.D. examinations and that he was able to earn a commercial driver's license as reasons for finding his IQ test scores invalid. Id. at 17-18. Given this, the ALJ accepted the diagnosis of borderline intellectual functioning, but found Gindlesperger's IQ test scores invalid. Id. at 18.

The ALJ next concluded that, given Gindlesperger's severe impairments, he was still able to perform simple, routine, low-stress work that did not involve significant interaction with co-workers or members of the public. Id. at 22. Because the vocational expert testified that Gindlesperger could perform various jobs despite his impairments, the ALJ found that he was not disabled within the meaning of the Act. Id. at 22-23.

### D. Legal Standards

#### 1. Standard of Review

This Court's review is guided by the Act. 42 U.S.C. § 405(g). Section 405(g) provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, the court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995). The question of whether the evidence is substantial enough to support a decision is both a question of quantity, and a requirement that the administrative decision must be "accompanied by a clear and satisfactory explication of the basis on which it rests." Diehl v. Barnhart, 357 F.Supp.2d 804, 808 (E.D.Pa. 2005) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), reh'g denied, 650 F.2d 481 (3d Cir. 1981)); Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

#### 2. Standard for Determining Disability

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both impairment and inability to work must last twelve months). Here, Gindlesperger does not challenge the ALJ's findings of physical limitation. Document # 6-12, pages 12-13. Therefore, his mental impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.; 20 C.F.R. § 404.1520 (2006).

The Commissioner has established a now familiar five-step sequential process to

evaluate whether a claimant is disabled. 20 C.F.R. §404.1520(a)(4). First, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity; if so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a)(4)(I), (b); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir.2004). Next, the Commissioner asks whether the claimant's impairment is "severe"; a negative answer results in the denial of benefits. 20 C.F.R. § 404.1520(a)(4)(ii), (c); Id. At step three, the Commissioner asks whether the claimant suffers from a listed impairment or its equivalent. If so, the claimant is entitled to benefits; if not, the Commissioner's inquiry proceeds to the next step. 20 C.F.R. § 404.1520(a)(4)(iii), (d); Id. Step four calls for the Commissioner to determine whether the claimant retains "residual functional capacity" to perform past relevant work; if so, the claimant is not entitled to benefits. 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); Id. Finally, at step five, the Commissioner determines whether the claimant, in light of his or her age, education, and work experience, can transition to other available work. A positive answer will result in the denial of benefits. 20 C.F.R. § 404.1520(a)(4)(v), (g); Id. The claimant bears the burden of establishing steps one through four; at step five, the burden shifts to the Commissioner. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir.2007).

### E. Legal Discussion and Analysis

#### 1. The findings and opinion of the treating psychologist were substantially supported by the medical evidence of record and the ALJ did not err in relying on them.

Plaintiff Gindlesperger argues that the ALJ erred in giving greater weight to the opinion of Dr. Francis, the treating psychologist, over the opinion of Dr. Simons, the consulting psychologist. When considering a disability claim, an ALJ is required to "consider all the evidence and give some reason for discounting the evidence he rejects." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994). The United States Court of Appeals for the Third Circuit has instructed that "[a] cardinal principle ... is that the ALJ accord treating physicians' reports great

weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). Moreover, "a treating physician's report not only may be given more weight, it must be given controlling weight, if so supported." Rieder v. Apfel, 115 F.Supp.2d 496, 501 (M.D.Pa.2000) (discussing 20 C.F.R. § 404.1527).

Consulting psychologist Dr. Simons found marked functional limitations following an examination of Plaintiff. Specifically, Dr. Simons maintained that Gindlesperger had marked impairments in responding appropriately to work pressure in the usual work setting and in responding appropriately to changes in a routine work setting. Document # 6-7, page 1. Here, the ALJ did not err in giving Dr. Francis' opinion significant weight. Dr. Francis' opinion was supported by substantial medical evidence which was consistent with the record as a whole.

The ALJ acknowledged Dr. Simons' findings of "marked impairments," but noted that Dr. Simons had only examined Gindlesperger once, and that his opinions of marked impairment are contradicted by those of the treating psychologist, Dr. Francis, and the treating psychiatrist, Dr. Prabhu, who found only moderate restrictions in Gindlesperger's ability to respond appropriately to the pressures of a work environment. Dr. Francis found Gindlesperger to be winsome, able to think and talk fairly rapidly. Document # 6, pages 19-21. Further, Dr. Francis found plaintiff to have appropriate communication skills, including speech that was intelligible and spontaneous, goal-oriented and relevant though processes. Document # 6-10, pages 9-10. Dr. Francis did not find Gindlesperger to be suffering from any delusions, preoccupations, suicidal thoughts or homicidal ideation. Id. at 10.

These findings are supported by those of the treating psychiatrist, Dr. Prabhu. The ALJ noted Dr. Prabhu's opinion that Gindlesperger was alert and appropriately oriented, had intact insight and judgment, and had a GAF score of 60 indicating only moderate impairment.

Document # 6-8, page 21[3].

It is significant, as the Commissioner points out, that even Dr. Simons, the consulting psychologist, found Gindlesperger to manifest good concentration and attention, concrete recognition, fluent speech, normal tone and normal short-term memory. Document # 6-6, page 24. The objective medical evidence presented in this matter is substantial and supports the opinion of Dr. Francis, the treating psychologist. The ALJ committed no error in giving Dr. Francis' opinion significant weight.[4]

### III. CONCLUSION

Considering the record as a whole, the findings of the ALJ followed the law concerning the evaluation of the opinion of the treating physicians and treating psychologists and his conclusions are based upon substantial evidence in the record. For the reasons discussed above, it is respectfully recommended that the decision of the Commissioner be affirmed.

Accordingly, it is recommended that Gindlesperger's Motion for Summary Judgment [Document # 9] be denied. It is further recommended that the Motion for Summary Judgment filed by the Commissioner [Document # 11] be granted, thereby affirming the decision of the Commissioner to deny the application for Supplemental Social Security income and disability benefits.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days

---

[3] Importantly, this medical report by Dr. Prabhu does pertain to Plaintiff.

[4] Finally, Gindlesperger's own testimony supports the ALJ's determination of only moderate impairment. Gindlesperger admitted that he was able to shop, cook, clean, maintain his residence, pay bills and do laundry. Document # 6-10, pages 13-14. He also indicated he enjoyed hunting and fishing. Document # 6-12, pages 4-5. He further testified that he assisted a friend in installing a kitchen floor. Id. at 3-4.

11

from the date of service to file written objections to this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

<u>S/ Susan Paradise Baxter</u><br>
SUSAN PARADISE BAXTER<br>
Chief U.S. Magistrate Judge

Dated: February 26, 2008